IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KIMBERLY NEAL BEPPLE** and **BRIDGETTE LEWIS**, individually and behalf of a class of others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>**DR. STEVE SHELTON**, **DR. ELIZABETH SAZIE**, **DR. ROBERT SNIDER**, **DARREN ULFORD**, **ALANA BRUNS**, **R.N. HAN VU**, **M.A. JAMES COULTER**, **RAYMOND HETLAGE**, **HEIDI STEWARD**, **LLOYD SHIMABUKU**, **WILLIAM HOEFEL**, **HEATHER VILLANUEVA**, **DAVID BROWN**, and **DEB ROBERTSON**,<br><br>    Defendants. | Case No. 3:15-cv-727-SI<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Leonard Randolph Berman, LAW OFFICE OF LEONARD R. BERMAN, 4711 SW Huber Street, Suite E-3, Portland, OR 97219. Of Attorneys for Plaintiffs.

Ellen F. Rosenblum, Attorney General, Michael R. Washington, Senior Assistant Attorney General, Jessica B. Spooner, Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, TRIAL DIVISION, 1162 Court Street NE, Salem, OR 97301. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs Kimberly Neal Bepple ("Bepple") and Bridgette Lewis ("Lewis") (collectively "Plaintiffs") previously were inmates incarcerated at the Coffee Creek Correctional Facility ("CCCF") operated by the State of Oregon. Plaintiffs bring this lawsuit against certain medical care providers and employees at CCCF.

After the Court granted in part and denied in part Defendants' amended motion for partial summary judgment, three sets of claims remain for trial. First, both Plaintiffs allege state tort claims of medical negligence against Defendants Dr. Robert Snider ("Dr. Snider"), Dr. Steve Shelton ("Dr. Shelton"), Dr. Elizabeth Sazie ("Dr. Sazie"), James Coulter ("Coulter"), and Han Vu ("Vu"). Second, both Plaintiffs allege state tort claims for sexual battery against Dr. Snider. Third, Plaintiff Bepple alleges a civil rights claim under 42 U.S.C. § 1983 against both Dr. Snider and Dr. Shelton.

In addition to ruling on Defendants' amended motion for partial summary judgment, the Court granted Defendants' motion to bifurcate the trial into two phases. The first phase is intended to resolve the issue of whether Plaintiff Lewis provided a timely tort claim notice as required under the Oregon Tort Claims Act (the "OTCA"). The second phase is intended to resolve all remaining issues and claims.

Under the OTCA, unless a person provides notice of a claim within 180 days of an alleged injury, that person is barred from bringing any claims under state tort law based on that alleged injury. Or. Rev. Stat. ("ORS") § 30.275(2)(b). The date of the alleged injury to Plaintiff Lewis (as well as to Plaintiff Bepple) is May 1, 2013. Defendants assert that the Oregon Department of Administrative Services ("DAS") received Lewis's notice on October 29, 2013, which is 181 days after her alleged injury. Lewis responds that she provided timely notice on October 27, 2013, and adds that DAS sent her an acknowledgement of receipt dated October 30,

PAGE 2 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

2013, without suggesting that her notice was untimely. Lewis also states that the DAS reviewed her claim on the merits, rather than finding her notice untimely. The Court denied Defendants' motion for partial summary judgment on this issue. The Court also granted Defendants' motion to bifurcate the trial.[1]

## BACKGROUND

The Court takes the following alleged facts from the complaint (ECF 1) and the parties' summary judgment briefing.[2] Lewis and Bepple were both inmates at CCCF beginning in late April 2013. They allege that on May 1, 2013, during the required gynecological examinations for new female inmates, they were sexually assaulted and battered by Dr. Snider. They also allege that medical negligence occurred on that date.

On the day of their examinations, May 1, 2013, Lewis and Bepple notified CCCF's Captain Raymond Hetlage ("Hetlage") of the incident. Hetlage notified CCCF's Captain Alana

---

[1] The OTCA provides the "sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification" by the public body. Or. Rev. Stat. ("ORS") § 30.265(2). The OTCA bars actions against individual tortfeasors acting within the scope of their public employment and provides that the court upon motion will substitute the public body as the sole defendant. ORS § 30.265(3). The OTCA provides only two exceptions to the prohibition on tort claims against individual public employees acting within the scope of their duties: (1) when the employee is not subject to indemnification because the employee is sued for acts that amount to "malfeasance in office or willful or wanton neglect of duty," ORS § 30.285(2); and (2) when the OTCA action alleges damages greater than the OTCA's statutory damage cap, which is $1.8 million for a single claimant and $3 million for all claimants bringing a cause of action arising on or after July 1, 2012, and before July 1, 2013, ORS §§ 30.271(2)-(3). Defendants have not moved to substitute the State of Oregon for the individual defendants, and therefore, the Court does not consider at this time whether the individual defendants acted within the scope of their employment or duties or would be eligible for representation and indemnification. *See Berry v. State, Dep't of Gen. Servs.*, 141 Or. App. 225, 230 (1996) ("Before the court can grant [a motion to substitute the public body], however, it must be satisfied that the employee acted in the scope of state employment and, thus, that the plaintiff has no claim against the employee as an individual.").

[2] The Court ascribes no presumption of truth to the alleged facts provided in this section.

Bruns ("Bruns"), and Bruns interviewed Lewis and Bepple on or about May 2, 2013. Bruns completed an Investigative Referral Sheet and sent it to the Special Investigation Unit ("SIU") of the Oregon Department of Corrections ("ODOC").

The SIU began an investigation, led by Darrel Ufford ("Ufford"), on May 6, 2013. Also on May 6, 2013, the ODOC notified the Oregon State Police of the investigation. Additionally, David Brown ("Brown"), CCCF's Medical Services Manager, was made aware of the complaints about Dr. Snider. Ufford interviewed Lewis, Bepple, Vu, Coulter, Dr. Snider, and another inmate ("KW"), who had talked to Lewis and Bepple about Dr. Snider. Ufford completed his investigation on June 12, 2013, finding no evidence to support the allegations made by Lewis and Bepple.

On June 24, 2013, William Hoefel ("Hoefel") sent a memorandum describing the results of the investigation to Dr. Snider, Dr. Shelton, Brown, Heidi Steward ("Steward"), Heather Villanueva ("Villanueva"), and Deb Robertson ("Robertson"). The memorandum stated that Hoefel had received a complaint that Dr. Snider used inappropriate procedures but that there was no evidence to support the allegations. On June 25, 2013, Robertson sent a copy of Ufford's full report to Dr. Shelton, Steward, Villanueva, Brown, and Hoefel. On July 10, 2013, Defendant Lloyd Shimabuku, Inspections Administrator for the SIU, also sent a copy of the investigative report to Steward and requested that Steward advise Executive Support of what discipline, if any, the ODOC would impose on Dr. Snider. No one referred the case to the Oregon State Police or any other outside county or federal agency for further action, and no discipline was imposed on Dr. Snider. Dr. Snider continued to work at CCCF.

CCCF has grievance procedures in place for inmates to make reports of alleged misconduct. CCCF processes grievances in accordance with the ODOC Administrative Rules

governing the Grievance Review System (revised March 1, 2011). The Inmate Orientation

Packet, given to inmates when they first arrive at the facility, contains instructions for filing

grievances. The inmate handbook also contains this information, and inmates can ask any

housing unit officer for a grievance form. An inmate may appeal any grievance response. Bepple

filed a formal grievance form with CCCF to report Dr. Snider concerning the incident that

allegedly took place on May 1, 2013. Lewis did not file a formal grievance form with CCCF to

report Dr. Snider.

      After the parties waived their right to trial by jury on the issue to be tried at phase one,

the Court held a one-day bench trial on August 1, 2016. Having weighed and evaluated all of the

evidence in the same manner that it would instruct a jury to do and having fully considered the

legal arguments of the parties, the Court makes the following Findings of Fact and Conclusions

of Law pursuant to Federal Rule of Civil Procedure 52(a).

## FINDINGS OF FACT

      The Court finds the following facts by a preponderance of the evidence.

1.     Both Lewis and Bepple were admitted to CCCF as women inmates on April 24, 2013.

2.     On May 1, 2013, Dr. Snider performed gynecological examinations on both Lewis and

Bepple at CCCF. That facility requires gynecological exams for all female inmates.

3.     Also on May 1, 2013, both Lewis and Bepple made informal complaints to CCCF staff

concerning Dr. Snider's alleged misconduct. The informal complaints led to an investigation by

the SIU.

4.     On June 24, 2013, the SIU completed its investigation and distributed a report

summarizing the investigation to Steward, the Superintendent of CCCF. The SIU's report

distribution coversheet depicts a box that can be checked if the report is sent to Risk

Management at DAS. The SIU only sends reports to Risk Management at DAS when Risk

PAGE 5 – FINDINGS OF FACT AND CONCLUSIONS OF LAW

Management requests a copy of a report and the SIU deems it appropriate for Risk Management to receive a copy.[3] The SIU did not send a copy of its June 24, 2013 report to Risk Management because Risk Management did not request a copy.

5.      The SIU's report described telephone calls by both Lewis and Bepple to their family and friends. In these telephone calls, both Lewis and Bepple stated that they had been "sexually assaulted" by Dr. Snider and wanted to hire lawyers to start "'a class action lawsuit' against the department." ECF 23-3 at 5. The SIU learned of these conversations by reviewing recordings of inmate telephone calls.

6.      According to Rebecca Krueger, the Assistant Deputy Inspector General at the ODOC, SIU employees do not investigate tort claims. The SIU investigates alleged employee misconduct and alleged inmate misconduct (weapons, drugs, and other contraband cases, both administrative and criminal). It also assists fugitive apprehension and other requests from outside law enforcement agencies. Additionally, it performs use of force reviews and investigates Prison Rape Elimination Act ("PREA") violations that rise to high-risk sexual harassment and may require criminal prosecution. ECF 45 ¶¶ 4-5.

7.      On October 3, 2013, Bepple timely filed a tort claim notice concerning the May 1, 2013 incident.

8.      On Sunday, October 27, 2013, Lewis filled out her tort claim notice, which she dated October 27, 2013, concerning the incident with Dr. Snider that allegedly took place on May 1, 2013. Lewis placed her completed notice in an envelope addressed to: Risk Management, 1225

_____

[3] Facts concerning the distribution of the SIU's report and the scope of the SIU's investigative responsibilities were not elicited during the trial. The Court, however, invited the parties to supplement the record after trial based on issues raised in the parties' closing arguments. Defendants submitted additional evidence, but Plaintiffs declined to do so.

Ferry Street SE, D150, Salem, OR 97301-4287. Defendants do not dispute that this is the correct address for giving a tort claim notice under the OTCA.

9.      On Sunday, October 27, 2013, Lewis deposited her tort claim notice, placed in an envelope for mailing, into the mailbox for her unit. Under Or. Admin. R. § 291-131-0015(5), CCCF does not process mail on the weekend.

10.     The 180th day after May 1, 2013, is Monday, October 28, 2013.

11.     CCCF processed Lewis's envelope for mailing on Monday, October 28, 2013. Lewis's envelope is postmarked October 28, 2013, with a "PM" notation following the date.

12.     DAS received Lewis's tort claim notice on Tuesday, October 29, 2013.

13.     DAS acknowledged receipt of Lewis's notice in a formal letter dated Wednesday, October 30, 2013.

14.     DAS denied Lewis's claim on the merits with a formal Notice of Denial dated November 12, 2013. DAS did not assert that Lewis's claim was untimely.

15.     Lewis and Bepple filed their lawsuit in federal court on April 29, 2015.

## CONCLUSIONS OF LAW

The Court makes the following conclusions of law.

1.      The OTCA provides an exclusive remedy for pursuing a tort claim under Oregon law against a public body or an officer, employee, or agent of a public body within the scope of ORS §§ 30.260 to 30.300. The OTCA requires a plaintiff to provide notice of claim within 180 days after the alleged injury. ORS § 30.275(2)(b). For a plaintiff to meet the requirement of giving notice of a claim within 180 days of the alleged injury, the relevant public body must receive that notice within 180 days. *McDonald v. State, Children's Servs. Div.*, 71 Or. App. 751, 754 (1984); *see also Tyree v. Tyree*, 116 Or. App. 317 (1992).

2.      The notice period in ORS § 30.275 begins to run when a plaintiff "knows that he or she

has suffered some harm and knows that it is the result of tortious conduct," even if the plaintiff

"did not know the full extent of the harm or that those facts had legal significance." *Doe v. Lake*

*Oswego Sch. Dist.*, 353 Or. 321, 335 (2013).

3.      Lewis is not claiming that she did not know that Dr. Snider injured her on May 1, 2013.

Instead, Lewis is claiming that she filed her notice of tort claim in a timely manner because DAS

***actually or constructively*** timely received her notice on or before October 28, 2013, which is the

180th day after the alleged injury, and not on October 29, 2013, which is the date that DAS

claims it received Lewis's notice.

4.      Defendants contend that because DAS did not receive Lewis's tort claim notice until

Tuesday, October 29, 2013, Lewis's notice is untimely. According to Defendants, the latest date

that the Department could have actually received Lewis's notice for it to be timely was Monday,

October 28, 2013. Defendants further contend that the fact that Lewis prepared and dated her

notice on Sunday, October 27, 2013, and placed it in the mailbox on that date is legally

irrelevant.

5.      The plaintiff has the burden of proving that she has satisfied the notice requirements of

the OTCA. ORS § 30.275(7).

6.      Under the OTCA, notice is satisfied by either "formal" or "actual" notice of a claim,

commencement of an action, or payment of the claim. ORS § 30.275(3)(a)-(d). Formal notice

is satisfied through a written communication from the claimant or her representative containing:

(1) a statement that the claimant will assert a claim for damages against the public body or its

agents; (2) a description of the time, place, and circumstances giving rise to the claim, to the best

of the claimant's knowledge; and (3) the claimant's name and mailing address. ORS § 30.275(4).

If the claim is against the state or its agents, a claimant must send formal notice to the office of the Director of the Oregon Department of Administrative Services. ORS § 30.275(5).

7.      Because the Court has made the factual finding that DAS received Lewis's tort claim notice on Tuesday, October 29, 2013, the Court concludes that Lewis did not give timely formal notice to DAS. Therefore, the Court must determine whether Lewis gave actual notice of her tort claim. To make this determination, the Court must resolve the following three mixed questions of fact and law:

      a.      Does the fact that Lewis provided informal notice to CCCF and the DOC in May 2013 satisfy her notice obligations under the OTCA, under a theory of actual notice?

      b.      Does the fact that Lewis provided informal notice to CCCF and the DOC in May 2013 combined with the fact that Bepple provided timely notice to DAS of Bepple's tort claim relating to the same doctor (Dr. Snider) on the same date (May 1, 2013) allegedly involving the same act (sexual assault and battery) satisfy Lewis's notice obligations under the OTCA, especially considering that the State investigated both claims together well before the expiration of the 180-day period for providing a timely tort claim notice?

      c.      Does the fact that SIU knew that Lewis had told her friends and family that she wanted to bring "a class action lawsuit" based on the May 1, 2013 incident, combined with the fact that SIU notified CCCF's Superintendent, Steward, of Lewis's statement on June 24, 2013, satisfy Lewis's notice obligations under the OTCA, under a theory of actual notice?

8.      Actual notice is satisfied by any communication that allows a person or entity specified by the statute to "acquire[] actual knowledge of the time, place and circumstances giving rise to the claim, where the communication is such that a reasonable person would conclude that a

particular person intends to assert a claim against the public body or an officer, employee or agent of the public body." ORS § 30.275(6).

9.      ORS § 30.275(6) does not require "that a notice of claim . . . predict expressly the specific claims that will or may be asserted." *Flug v. Univ. Of Or.*, 335 Or. 540, 553 (2003). The statute, however, does require that "the notice . . . warn of the plaintiff's intent to bring 'a claim.'" *Id.* at 553-54. For example, it is insufficient for a plaintiff to have given the defendant letters stating that the alleged conduct "was unlawful" or "unreasonable." *Id.* at 554. Such statements are insufficient under the OTCA because "the import of those statements merely is that plaintiff regarded that behavior as contrary to law or unfair, not that plaintiff intended to sue over those matters." *Id.*

10.     When a claim is against the state or its agents, the communication must be made to either the office of the Director of the Oregon Department of Administrative Services "or any person responsible for administering tort claims on behalf of the public body." *Id.*

11.     A person is responsible for administering tort claims on behalf of a public body when that person, "acting within the scope of the person's responsibility, as an officer, employee or agent of a public body or as an employee or agent of an insurance carrier . . . , engages in investigation, negotiation, adjustment or defense of claims within the scope of [the OTCA], or in furnishing or accepting forms for claimants to provide claim information, or in supervising any of those activities." *Id.*

12.     The investigation of criminal charges is not investigation of claims within the scope of the OTCA. *See Plumeau v. Yamhill Cty. Sch. Dist. No. 40*, 907 F. Supp. 1423, 1434-35 (D. Or. 1995), ("[P]laintiffs may not rely on notice to state entities who are investigating *criminal charges* to meet their obligations of providing notice to a public body of potential *tort*

*claims*." (emphasis in original)), *aff'd sub nom. Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432 (9th Cir. 1997).

13.    "[A] person who in fact investigates claims involving his agency" qualifies as a proper person to receive notice under the OTCA. *McCabe v. State*, 314 Or. 605, 612 (1992). A superintendent of an agency, such as the Superintendent of the Oregon State Police, may qualify as a "person responsible for administering tort claims" when the evidence shows that tort claims against the agency are "investigated and evaluated at [the superintendent's] direction." *Id.* at 609.

14.    An agency employee does not qualify as a person who may receive actual notice of a tort claim simply because that person has managerial responsibilities. *See Atwood v. Or. Dep't of Transp.*, 2008 WL 803020, at *11 (D. Or. Mar. 20, 2008) (holding that a Human Resource Analyst and a Transportation Maintenance Manager were not responsible for administering tort claims on behalf of the Oregon Department of Transportation and thus notice to these individuals could not satisfy the OTCA).

15.    In May 2013, as part of her informal complaint, Lewis conveyed to Defendants her belief that Dr. Snider' conduct was unlawful or unreasonable, but she did not indicate any intent to sue as a result of that alleged conduct. Similarly, Bepple's notice of her intent to sue indicates nothing about Lewis's intent to sue. Therefore, Lewis's informal complaint in May 2013, even combined with Bepple's timely notice to DAS, is insufficient to satisfy the OTCA's actual notice requirements.

16.    The question whether Lewis's telephone conversations satisfy the actual notice requirement is a closer call. Even cryptic statements about bringing a lawsuit can qualify as communications about the time, place, and circumstances of a claim. *Scott v. Jackson Cty.*, 297 F. App'x 623, 626 (9th Cir. 2008) ("Here, the statement by [the plaintiff's] attorney, though

cryptic, was enough to put [the defendant] on actual notice as to the circumstances upon which [the plaintiff] intended to bring her lawsuit.").[4] Lewis asserted in the telephone conversations that she had been sexually assaulted by Dr. Snider and that she wanted to bring a class action. The telephone call occurred on or around May 1, 2013, the day of the incident. Therefore, the content of the telephone conversations is legally sufficient for actual notice. The remaining issue is whether employees of the SIU or the CCCF Superintendent, Steward, are "responsible for administering claims."

17.    Lewis does not claim that the SIU or Steward is involved in "negotiation, adjustment or defense of claims within the scope of [the OTCA], or in furnishing or accepting forms for claimants to provide claim information, or in supervising any of those activities." ORS § 30.275(6). Lewis does, however, claim that SIU employees and Steward investigate or supervise the investigation of tort claims.

18.    Lewis presented evidence that the SIU investigated reports of criminal conduct. The investigation of criminal complaints, however, does not satisfy the OTCA's actual notice requirements. *See Plumeau*, 907 F. Supp. at 1434-35. Additionally, Lewis did not present any evidence contradicting Ms. Krueger's assertion that the SIU only investigates criminal complaints. Neither Lewis nor Defendants presented any evidence about the scope of Steward's responsibilities.

19.    Lewis bears the burden of proving that she satisfied the OTCA's notice requirements. On the current record, it appears that the SIU does not investigate tort claims. Based on the evidence

---

[4] The "cryptic" statement in *Scott* consisted of the following comments by the plaintiff's criminal defense attorney at a hearing regarding criminal charges: "Your Honor there-there is one thing that-that [plaintiff]-and she has a civil attorney that wanted me to do-advise the County that they probably will be proceeding on a tort claim against the County for some of the Constitutional things that were presented here." *Scott v. Jackson Cty.*, 403 F. Supp. 2d 999, 1010 (D. Or. 2005), *aff'd in part, rev'd in part*, 297 F. App'x 623 (9th Cir. 2008).

presented, there is no way of knowing whether the Steward investigates or supervises the investigation of tort claims. Therefore, the Court cannot conclude that the SIU or Steward is "responsible for administering claims," and Lewis has failed to show that she gave actual notice to a person or entity authorized by the OTCA.

20.      Because Lewis did not meet her burden of showing that she gave either formal or actual notice of her state tort claims within 180 days of the alleged injury, as required by the OTCA, these claims are untimely.

## CONCLUSION

Plaintiff Lewis's state tort claims of medical negligence and sexual battery are dismissed.

**IT IS SO ORDERED**.

DATED this 5th day of August, 2016.

/s/ Michael H. Simon_____
Michael H. Simon
United States District Judge