# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KIMBERLY NEAL BEPPLE,** *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> **DR. STEVE SHELTON**, *et al.*, <br><br> Defendants. | Case No. 3:15-cv-727-SI <br><br> **OPINION AND ORDER** |

Leonard R. Berman, LAW OFFICE OF LEONARD R. BERMAN, 4711 SW Huber Street, Suite E-3, Portland, OR 97219. Of Attorneys for Plaintiffs.

Ellen F. Rosenblum, Attorney General; Michael R. Washington, Senior Assistant Attorney General; Jessica B. Spooner, Assistant Attorney General; OREGON DEPARTMENT OF JUSTICE, TRIAL DIVISION, 1162 Court Street NE, Salem, OR 97301. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Kimberly Bepple ("Bepple" or "Plaintiff") was an inmate at the Coffee Creek Correctional Facility ("CCCF"), a state prison for women in Oregon. In this lawsuit, Bepple alleges a civil rights claim under 42 U.S.C. § 1983 against Defendants Dr. Robert Snider and Dr. Steve Shelton and tort claims of medical negligence and sexual battery against the State of Oregon. The Court previously scheduled a jury trial to begin on March 6, 2017. On January 20, 2017, however, the parties notified the Court that the action had been settled. Under the parties'

settlement agreement, in exchange for Plaintiff's release of claims, the State agreed to pay Bepple a settlement payment of $175,000, plus reasonable attorney's fees and costs to be determined by the Court. ECF 106 at 3. Bepple timely filed her motion for attorney's fees and bill of costs. Defendants timely objected to Bepple's fee petition. For the reasons stated below, the Court grants in part Bepple's motion for attorney's fees and grants in full her bill of costs.

## BACKGROUND

The following facts are presented in the light most favorable to Bepple. On April 24, 2013, Bepple was admitted as an inmate at CCCF. On May 1, 2013, Dr. Snider performed a gynecological examination on Bepple at CCCF. That facility requires gynecological examinations for all female inmates. Bepple had undergone routine gynecological examinations in the past, both in and out of custody, without incident. Dr. Snider's examination, however, deviated from what Bepple had previously experienced. A medical assistant attended Bepple's examination. During Dr. Snider's examination of Bepple, a curtain was drawn, shielding Bepple from the view of the medical assistant. Dr. Snider inserted a speculum into Bepple's vagina and manipulated it "in a non-therapeutic and highly irregular and offensive manner." ECF 1 ¶ 8. Dr. Snider told Bepple that her cervix was playing "hide and seek." *Id.* ¶¶ 19, 21-22.

After the examination, Bepple called friends and family and told them that Dr. Snider had "sexually assaulted" her. ECF 8 at ¶ 7. Bepple alleges that Dr. Snider acted for his own sexual gratification rather than for any legitimate medical reason. According to Bepple, Defendants unlawfully failed to require visible attendants during gynecological examinations, report Dr. Snider's conduct to an outside agency, and hire, train, and supervise medical staff in how properly to treat female inmates to prevent sexual assault. According to Bepple's counsel, there are at least seven other women who previously were sexually assaulted by Dr. Snider while they were inmates at CCCF.

PAGE 2 – OPINON AND ORDER

# STANDARDS FOR ATTORNEY'S FEES

In a civil rights lawsuit brought under 42 U.S.C. § 1983, the district court may award the prevailing party its reasonable attorney's fees as part of costs. 42 U.S.C. § 1988(b); *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 460 (9th Cir. 2013). A district court's disposition of a motion for attorney's fees must "provide a reasonably specific explanation for all aspects of a fee determination" in order to allow for "adequate appellate review." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010).

The preferred method of calculating reasonable attorney's fees is the "lodestar" method. *Id.* at 551-52. This is because the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case, is readily administrable, and is objective. *Id.* In addition, one purpose of the federal fee-shifting statutes is to ensure that a prevailing plaintiff's counsel receives a fee that is "sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Id.* at 552. The lodestar method of calculating attorney's fees yields a fee that is presumptively sufficient to achieve this objective. *Id.* Although the lodestar calculation results in a presumptively reasonable fee, this amount may be adjusted in certain circumstances. *Id.*

The lodestar amount is the product of the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).[1] In making this calculation, the district court should take into consideration various reasonableness factors, including the quality of an attorney's performance, the results

---

[1] It is "well established that time spent in preparing fee applications" also is compensable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th Cir. 2013) (quoting *Anderson v. Director, OWCP*, 91 F.3d 1322, 1325 (9th Cir. 1996) (quotation marks omitted)).

obtained, the novelty and complexity of a case, and the special skill and experience of counsel. *See Perdue*, 559 U.S. at 553-54; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 n.11 (9th Cir. 2013).

In determining the number of hours reasonably spent, "the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The party seeking an award of attorney's fees "has the burden of submitting billing records to establish that the number of hours it has requested [is] reasonable." *Gonzalez*, 729 F.3d at 1202.

The district court may determine, in one of two ways, whether hours are excessive, redundant, or otherwise unnecessary, and thus excludable. The court may conduct an hour-by-hour analysis of the fee request. *Id*. at 1203. Alternatively, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure." *Id*. (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (quotation marks omitted)). "[W]hen a district court decides that a percentage cut (to either the lodestar or the number of hours) is warranted, it must 'set forth a concise but clear explanation of its reasons for choosing a given percentage reduction.'" *Id.* (quoting *Gates*, 987 F.2d at 1400). The Ninth Circuit recognizes one exception to this rule: "'the district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation.'" *Id*. (alteration in original) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

In addition, a number of district courts, including the District of Oregon, specifically caution against both block-billing and providing vague or otherwise inadequate descriptions of

tasks because these practices hinder a court's ability to assess the reasonableness of the time expended. As explained in a "Message from the Court Regarding Fee Petitions,"

> Increasingly, the Court has reviewed fee petitions where all or a substantial part of an attorney's time for one day is billed as a "block" without segregating time for individual tasks. This makes assessing the reasonableness of the time spent on a particular task extremely difficult. The Court recommends that members of the bar record time spent on particular, individual tasks and support their fee petitions with a level of documentation that allows the Court, and opposing counsel, to adequately review the reasonableness of the time spent on a single task.

U.S. District Court, District of Oregon, "Message from the Court Regarding Fee Petitions," available at https://www.ord.uscourts.gov/index.php/court-info/court-policies/fee-petitions (last updated March 2, 2017) (last visited May 16, 2017).

Consistent with this cautionary statement, United States Magistrate Judge John Acosta noted: "the court may excuse this method when the billing period is no more than three hours." *Noel v. Hall,* 2013 WL 5376542, at *6 (D. Or. Sept. 24, 2013). For block-billing periods in excess of three hours, however, Judge Acosta reduces each applicable entry by fifty percent.

> Accordingly, the block-billed time requested over the three-hour maximum will be reduced by fifty percent. Such a reduction is warranted because the vague nature of the entry makes it impossible for the court to make *any* assessment as to the reasonableness of that time expended. *See Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 892 (9th Cir. 2011) ("The fee award may be reduced if [plaintiff's] renewed request is supported only by block-billing statements of the relevant activity, although a fee award cannot be denied on this basis.").

*Id.* (alteration and emphasis in original). This Court follows Judge Acosta's approach. *See, e.g., O'Connor v. County of Clackamas*, Case No. 3:11-cv-1297-SI, 2016 WL 3063869, at *3-4 (D. Or. May 31, 2016).

After determining the number of hours reasonably spent, the district court calculates the reasonable hourly rates for the attorneys and paralegals whose work comprise the reasonable

number of hours used in calculating the lodestar amount. For this purpose, the "'prevailing market rates in the relevant community' set the reasonable hourly rates." *Gonzalez*, 729 F.3d at 1205 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). "'Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits.'" *Id.* (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)). Within this geographic community, the district court should consider the experience, skill, and reputation of the attorneys or paralegals involved. *Id.* In determining reasonable hourly rates, typically "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

In addition, courts in the District of Oregon have the benefit of several billing rate surveys. As explained in the "Message from the Court Regarding Fee Petitions,"

> As for the reasonable hourly rate, the Court has determined that it will use the Oregon State Bar Economic Survey as its initial benchmark. The current edition of the Economic Survey is available on the Oregon State Bar's website. Attorneys may argue for higher rates based on inflation, specialty, or any number of other factors. However, the Court requests that fee petitions address the Economic Survey and provide justification for requested hourly rates higher than reported by the Survey.

U.S. District Court, District of Oregon, "Message from the Court Regarding Fee Petitions," available at https://www.ord.uscourts.gov/index.php/court-info/court-policies/fee-petitions (last updated March 2, 2017) (last visited May 16, 2017).

The Oregon State Bar 2012 Economic Survey ("OSB 2012 Survey"), which is the most recent survey of billing rates available from the Oregon State Bar, contains data on attorney billing rates based on type of practice, geographic area of practice, and years of practice. A copy

of the OSB 2012 Survey is available at

http://www.osbar.org/_docs/resources/Econsurveys/12EconomicSurvey.pdf (last visited May 16, 2017).

Another useful survey, although more limited in scope, is the Morones 2014 Survey of Commercial Litigation Fees ("Morones 2014 Survey"). The Morones 2014 Survey contains data on attorney billing rates based on years of experience, but it is confined to commercial litigation attorneys practicing in Portland, Oregon. The Morones 2014 Survey reports data for 297 attorneys from 19 law firms (out of 29 law firms requested to provide data). A copy of the Morones 2014 Survey is available at, among other places, http://mbabar.org/assets/documents/cle//012115%20Attorney%20Fee%20Petitions%20Mats.pdf (last visited May 16, 2017).

There is a strong presumption that the fee determined by a lodestar calculation is a reasonable fee. *Perdue*, 559 U.S. at 552. A district court may, however, adjust the lodestar amount in "rare" and "exceptional" cases, such as when a particular factor bearing on the reasonableness of the attorney's fee is not adequately taken into account in the lodestar calculation.[2] *See Perdue*, 559 U.S. at 552-54 (finding that, in certain circumstances, the superior performance of counsel may not be adequately accounted for in the lodestar calculation);

---

[2] Factors that may be relevant to the reasonableness of a fee include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation, and the ability of the attorneys; (9) the "undesirability" of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Based on subsequent case law, a twelfth factor identified in *Kerr*, the fixed or contingent nature of the fee, is no longer a valid factor to consider in determining a reasonable attorney's fee. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 n.7 (9th Cir. 2011).

*Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988) (finding that although in ordinary cases the "results obtained" factor is deemed adequately accounted for in the lodestar calculation, it may serve as a basis to adjust the lodestar when "an attorney's reasonable expenditure of time on a case [is not] commensurate with the fees to which he is entitled").

## DISCUSSION

### A. Attorney's Fees

#### 1. Analysis of Hours Reasonably Spent

Plaintiff's counsel, Leonard R. Berman, submitted with his declaration billing records showing the time that he asserts was necessarily expended in the prosecution of this case. ECF 110-1 at 1-4. Mr. Berman appears to have been the only timekeeper for Bepple on this matter for whom fees are being requested. In his declaration, Mr. Berman also states: "I do not charge for time I consider administrative or secretarial." ECF 110 at 3. Mr. Berman's billing records reflect 288 hours personally spent by him between January 18, 2015, and February 14, 2017. Further, Mr. Berman initially estimated that he would need to spend six hours researching and responding to Defendant's anticipated objections. ECF 110-1 at 4. In his reply, however, Mr. Berman concedes that he over-estimated this time and thus seeks compensation for only four hours spent in preparing his reply to Defendant's objections. ECF 113 at 5. Thus, Mr. Berman submits that he reasonably spent 292 hours in prosecuting this lawsuit, including his work on the fee petition and its reply.

In evaluating Mr. Berman's fee request, the Court conducted an hour-by-hour analysis of Mr. Berman's billing records. Although this lawsuit was filed on April 29, 2015 (ECF 1), Mr. Berman states that he "first started work on this case in January 2015." ECF 108 at 5. As a general proposition, it is reasonable to compensate for pre-filing investigative time. When the lawsuit was originally filed, however, there were two named plaintiffs, Kimberly Bepple and

Bridgette Lewis. ECF 1. The Court dismissed Lewis's federal claims at summary judgment. ECF 27. The Court then held a bifurcated trial on Lewis's remaining state claims, and dismissed them as well based upon findings of fact and conclusions of law from that trial. ECF 46.

To the extent that Lewis was going to be a trial witness for Bepple (ECF 113 at 2), the time spent by Mr. Berman meeting with Lewis, including defending her deposition and communicating with her on matters related to Bepple's claim, may be recovered in Bepple's fee request. The hours spent by Mr. Berman, however: (a) responding to Defendants' successful motion for summary judgment against the claims asserted by Lewis; (b) opposing Defendants' successful motion to bifurcate; and (c) preparing and handling the bifurcated trial on Lewis's unsuccessful state law claims are not hours reasonably incurred in the prosecution of Bepple's settled claims. In short, the time spent unsuccessfully presenting Lewis's claims was not necessary for the successful presentation of Bepple's claims. Thus, the Court will reduce Plaintiff's lodestar by these hours.

In his daily entries for June 14, 2015, June 29, 2014, July 7, 2015, and July 9, 2015, however, Mr. Berman combined his time spent opposing Defendants' summary judgment motion against Lewis with Mr. Berman's time spent opposing Defendants' summary judgment motion against Bepple. The Court resolves this problem by dividing the undifferentiated claimed time in half for each of these entries. In addition, Mr. Berman includes a block-billed time entry for 6.45 hours worked on January 17, 2017, shortly before this case settled. Following the approach to block-billing described above, the Court reduces that entry by one-half.

For these reasons, the Court reduces Mr. Berman's time entries as follows:

| Date | Entry | Claimed | Disallowed | Explanation |
| --- | --- | --- | --- | --- |
| 06/14/15 | R/R MSJ, DEC, MW, Exhibits | 1.25 | 0.625 | ½ Lewis |
| 06/29/15 | Research response to MSJ | 2.25 | 1.125 | ½ Lewis |

PAGE 9 – OPINON AND ORDER

| Date | Task | Hours | Adj. | Category |
|---|---|---|---|---|
| 07/07/15 | Draft first draft Resp to MSJ | 3.75 | 1.875 | ½ Lewis |
| 07/09/15 | Final draft Response MSJ | 2.25 | 1.125 | ½ Lewis |
| 02/17/16 | Confer on motion to bifurcate | 0.25 | 0.250 | Bifurcation |
| 02/26/16 | R/R Motion to Bifurcate, Dec JS | 1.10 | 1.100 | Bifurcation |
| 03/08/16 | Research resp. to bifurcate motion | 1.10 | 1.100 | Bifurcation |
| 03/09/16 | First draft resp. to bifurcate motion | 2.25 | 2.250 | Bifurcation |
| 03/10/16 | Final draft resp. B/M | 0.75 | 0.750 | Bifurcation |
| 03/28/16 | Reply to Motion to Bifurcate | 0.70 | 0.700 | Bifurcation |
| 06/29/16 | Tel R16 setting Bifurcation | 0.25 | 0.250 | Bifurcation |
| 07/25/16 | R/R OR Trial Memo, DEC MW | 1.25 | 1.250 | Bifurcation |
| 07/25/16 | Final Draft Trial Memo | 1.50 | 1.500 | Bifurcation |
| 08/01/16 | Hearing/Trial | 3.00 | 3.000 | Bifurcation |
| 01/17/17 | Draft, Confer on Motion, Dec | 6.45 | <u>3.225</u> | ½ Block Bill |

**Total hours disallowed:** **20.125**

Subtracting 20.125 hours from Mr. Berman's claimed 292 hours yields 271.875 as the total number of hours reasonably spent on this litigation on behalf of Bepple.

**2. Analysis of Reasonable Hourly Rate of Plaintiff's Counsel**

Mr. Berman received his law degree in 1994. He was admitted to the Bar of the State of Washington in 1995 and to the Bar of the State of Oregon in 1996. ECF 110 at 1. Thus, when this case was filed in 2015, Mr. Berman had been a practicing lawyer for almost 20 years. In his declaration, Mr. Berman states: "My ordinary hourly rate for retained services has been $375.00 per hour." ECF 110 at 2. That is the hourly rate that he seeks in this case. Mr. Berman, however, has not provided the Court with any evidence that any other court has ever approved an hourly rate for him that is even close to $375.

According to the OSB 2012 Survey, the 2012 average hourly billing rate for Portland attorneys with 16-20 years' experience was $256. This figure is lower than the 2012 average hourly billing rate in Portland for civil litigation plaintiff personal injury attorneys, which was $280. According to information obtained from the U.S. Bureau of Labor Statistics, the U.S. annual inflation rate in 2012 was 2.1 percent; in 2013, that rate was 1.5 percent, in 2014, that rate was 1.6 percent, in 2015, that rate was 0.1 percent, and in 2016, that rate was 1.3 percent.

PAGE 10 – OPINON AND ORDER

http://www.usinflationcalculator.com/inflation/current-inflation-rates/ (last visited May 17, 2017). This yields a five-year average annual inflation rate of 1.32 percent between 2012 and 2016. Applying this inflation rate to an hourly rate of $280 in 2012, a reasonable equivalent at the end of 2016 would be approximately $300.

Mr. Berman, however, argues that his specialty of civil rights litigation is a rapidly changing area of law and that a reasonable hourly rate for civil rights litigation should be higher than an average rate for plaintiff-side personal injury attorneys. The Court is not fully persuaded. Although civil rights litigation is complex, so is the medical knowledge needed by plaintiff-side personal injury attorneys. On the other hand, looking at the Morones 2014 Survey of commercial litigation fees, the Court notes that the average hourly billing rate in 2014 for commercial litigation attorneys with 10-19 years' experience was $371, which is close to the $375 hourly rate that Mr. Berman seeks.

Mr. Berman also calls to the Court's attention a decision in 2014 from U.S. District Judge Michael W. Mosman, approving a billing rate for Mr. Berman of approximately $275 per hour. *See Mashburn v. Yamhill County*, Case No. 3:08-cv-718-MO (D. Or. April 8, 2014) (ECF 256 at 14-15) (awarding $124,524 in attorney's fees for 451.9 hours reasonably spent between 2007 and 2013). Adjusting this rate for the modest inflation experienced in 2015 and 2016, would yield a comparable rate of no more than $285 per hour.

For administrative convenience, the Court adopts a single hourly rate to apply to Mr. Berman's time spent on this matter in 2015, 2016, and early 2017. Taking all of the considerations discussed above into account, the Court concludes that an hourly rate of $300 is a reasonable rate to apply to the work performed by Mr. Berman on behalf of Bepple.

### 3. Other Objections Raised by Defendants

In addition to the issues already discussed, Defendants raise two other objections. First, Defendants object to Mr. Berman seeking compensation for time spent communicating with the media. As Defendants correctly observe,

> "[A]n award of attorneys' fees should not include amounts for contact with the media." *McKenzie Flyfishers v. McIntosh*, 158 F. Supp. 3d 1085, 1096 (D. Or. 2016), citing *Atlantic Recording Corporation v. Andersen*, No. CV 05-933-AC, 2008 WL 2536834, at *11 (D. Or. June 24, 2008). Media contact is generally done at an attorney's own expense. *Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir.1995) (finding the district court "did abuse its discretion in awarding plaintiffs attorneys' fees for attending [a] . . . Conference and for media contact."); *see also Bonnichsen v. U.S.*, No. Civ. 96-1481-JE, 2004 WL 2901204, at *9 (D.Or. Dec. 15, 2004) ("media contact is the kind [ ] of activit[y] that attorneys generally do at their own expense.").

ECF 111 at 7. The Court agrees with these general statements of law. Plaintiff replies, however, that no "media-related billing" is included in the fees requested by Mr. Berman. ECF 113 at 2. The few entries that Defendants identify as "FB" (referring to Facebook) do not appear to be "media-related" in the prohibited sense, but instead represents time spent by Mr. Berman searching for potential trial witnesses in this case to prove that Dr. Snider engaged in relevant "other bad acts." Such evidence likely would have been received at trial under Rule 404(b)(2) of the Federal Rules of Evidence to prove Dr. Snider's intent, absence of mistake, or lack of accident. Based on the record in this case, including Bepple's witness list, it appears that Plaintiff's counsel may have been successful in finding several witnesses, which also may have played a role in the parties reaching a settlement. Defendants' objection is overruled.

Second, Defendants object to Plaintiff's counsel recovering fees "for ethical violations." ECF 111 at 8. Defendants assert:

> The Court should not simply deem this as a matter for the Oregon State Bar. Instead, the Court has an opportunity in this case to

> demonstrate that this type of behavior is unacceptable, improper,
> and will not be tolerated. Defendants respectfully request that the
> Court reduce Plaintiff's counsel's fees for this conduct by an
> amount the Court deems appropriate.

*Id*. at 9. Plaintiff's counsel responds that he did not engage in ethical violations. ECF 113 at 3. Because no ethical violations were committed in the presence of the Court and there is no pending motion for sanctions, the Court declines to undertake the detailed level of investigation and fact-finding that would be necessary before any conclusion that an ethical violation has occurred would be appropriate. Counsel is free, however, and indeed possibly even required, to report ethical violations by an Oregon attorney to the Oregon State Bar. That entity is more than capable of investigating any such allegations and providing all affected parties with appropriate due process. Defendants' objection is overruled.

### 4. Conclusion

For the reasons stated above, the Court finds that 271.875 hours were reasonably spent in the prosecution of this case on behalf of Bepple. The Court also finds that an hourly rate of $300 is reasonable for the work performed by Mr. Berman in this case. Accordingly, the Court awards Bepple reasonable attorney's fees in the amount of $81,563.

## B. Costs

Under 28 U.S.C. § 1920, a judge or clerk of the court "may tax as costs" certain expenses specifically described in, and limited by, that statute when a party timely files a bill of costs. Such expenses are referred to as "taxable costs," and generally may be recovered by a prevailing party pursuant to Rule 54(d) of the Federal Rules of Civil Procedure. The United States Supreme Court has explained that § 1920 "define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority." *W. Va. Univ. Hosps., Inc. v. Casey*, 499

U.S. 83, 86 (1991). Thus, absent express statutory authority, a prevailing party who timely files a bill of costs may not recover expenses other than those that are specifically authorized by § 1920.

Bepple's bill of costs (ECF 109) seeks a total of $990 for expenses solely related to several depositions taken in this case. Defendants do not object. The Court concludes that Bepple's cost bill is reasonable. Accordingly, the Court awards Bepple costs in the amount of $990.

**C. Defendants' Motion for Return of Video Evidence**

On May 17, 2017, Defendants filed a motion for return of video evidence. ECF 114. In short, Defendant seek the return of video evidence produced to Mr. Berman during discovery in this case pursuant to Court Order. ECF 78. In addition, the Stipulated Protective Order in this case provides, in relevant part: "Upon the request of the producing party or third party, within 30 days after the entry of a final judgment no longer subject to appeal on the merits of this case, or the execution of any agreement between the parties to resolve amicably and settle this case, the parties and any person authorized by this Protective Order to receive confidential information *shall return to the producing party* or third party, or destroy, all information and documents subject to this Protective Order. ECF 78 at 6, ¶ 14 (emphasis added). The Settlement Agreement in this case was signed on January 20, 2017. ECF 106 at 8. According to Defendants in their motion, "Plaintiff's counsel has informed me that he has misplaced the evidence." ECF 114 at 2.

Plaintiff's response to Defendants' motion is due May 31, 2017. The Court will await Plaintiff's response before ruling on the motion. In the meantime, the Court suspends any obligation by Defendants to pay Plaintiff's award of attorney's fees or costs until after the Court resolves Defendants' Motion for Return of Video Evidence.

## CONCLUSION

Plaintiff's motion for award of attorney's fees (ECF 108) is granted in part. Plaintiff is awarded $81,563 in attorney's fees. Plaintiff's bill of costs (ECF 109) is granted in full. Plaintiff is awarded $990 in costs. Defendants' obligation to pay these amounts, however, is suspended until after the Court resolves Defendants' Motion for Return of Video Evidence (ECF 114).

**IT IS SO ORDERED**.

DATED this 18th day of May, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge